## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Clim-A-Tech Industries, Inc.,                    **Civil No. 14-1496 (MJD/SER)**

      Plaintiff,

v.                                               **REPORT AND RECOMMENDATION**

William A. Ebert and Sunwest Supply, Inc.,

      Defendants.

---

Gerald E. Helget, Michael M. Sawers, and Kristine M. Boylan, Esqs., Briggs & Morgan, PA, 80 South 8th Street, Suite 2200, Minneapolis, Minnesota 55402, for Plaintiff.

Lisa Anne Smith, Peter B. Goldman, and Shijie Feng, Esqs., DeConcini McDonald Yetwin & Lacy, P.C., 2525 East Broadway Boulevard, Suite 200, Tucson, Arizona 85716, for Defendants.

Johnathan R. Maddox, Henson & Efron, PA, 220 South 6th Street, Suite 1800, Minneapolis, Minnesota 55402, for Defendants.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendants William A. Ebert and Sunwest Supply, Inc.'s (collectively "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction and Motion in the Alternative to Transfer Venue ("Motion to Dismiss") [Doc. No. 15]. This matter was referred to the undersigned by the Honorable Michael J. Davis pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. (Order of Referral) [Doc. No. 23]. For the reasons stated below, the Court recommends granting the Motion to Dismiss.

## I.      BACKGROUND

On May 13, 2014, Plaintiff Clim-A-Tech Industries, Inc. ("Clim-A-Tech") filed its complaint against Defendants. (Declaratory J. Compl.) [Doc. No. 1]. Clim-A-Tech filed an

amended complaint on August 27, 2014. (Am. Declaratory J. Compl., "Am. Compl.") [Doc. No. 8].

Clim-A-Tech is "a Minnesota corporation with a principal place of business" in Hopkins, Minnesota. (*Id.* ¶ 1). It is "a . . . worldwide supplier of plastic profile extrusions and die-cut flexible components to small and large window [and] door companies, appliance manufacturers, [the] recreational industry, technology sector, refining/mining industry, retail and other industrial/commercial markets." (*Id.* ¶ 7). Defendant William A. Ebert ("Ebert") is "a resident of the State of Arizona and is the named inventor and owner of U.S. Patent No. 6,746,581" (the "'581 Patent"). (*Id.* ¶ 2). Sunwest Supply, Inc. ("Sunwest"), is "an Arizona corporation with a principal place of business" in Tucson, Arizona. (*Id.* ¶ 3). Ebert is an officer, director, and registered agent for Sunwest. (*Id.*).

Clim-A-Tech alleges that "Defendants, their employees, agents, and associates have—starting several years ago—leveled verbal accusations of patent infringement in the industry, to Clim-A-Tech's current and potential customers." (*Id.* ¶ 10). Clim-A-Tech asserts that its dispute with Defendants "came to a head when, on April 30, 2014, a cease and desist letter was sent on behalf of 'Sunwest'" to Clim-A-Tech's Chief Operating Officer in Hopkins, Minnesota, "formally alleging infringement of [the '581 Patent] by Clim-A-Tech's manufacture and sale of its U shaped cathode protector." (*Id.* ¶ 11). The letter "demands that Clim-A-Tech cease and desist from all infringing activity relative to the [']581 Patent, and further states that a patent license will not be offered." (*Id.* ¶ 12). The "April 30, 2014 cease and desist demand, and position that no patent license will be offered" were reiterated in a July 18, 2014 letter. (*Id.* ¶ 13). Clim-A-Tech further alleges that "[i]n an effort to inject delay and to further harm and prejudice Clim-A-Tech, a patent prosecution attorney on August 26, 2014[,] filed a Supplemental

Information Disclosure Statement with the United States Patent and Trademark Office" ("PTO") regarding the '581 Patent. *See* (*id.* ¶ 14).

Based on these allegations, Clim-A-Tech seeks declaratory judgment that "commercial manufacture, use, sale, and offer to sell the U shaped cathode protector will not infringe the '581 Patent," the '581 Patent is invalid, and the '581 Patent is unenforceable on a number of grounds. (*Id.* ¶¶ 18–40, 50–67). Clim-A-Tech also alleges that Sunwest has tortiously interfered with its existing business contracts and prospective business relationships. (*Id.* ¶¶ 41–49). Clim-A-Tech seeks damages, attorney fees and costs, an "injunction enjoining Defendants and their agents, employees, officers, servants, representatives, successors and assigns, and others in active concert [or] privity with them from tortious interference with Clim-A-Tech's existing or prospective business relations," including "enforcing the '581 Patent against any of Clim-A-Tech's current or future customers." (*Id.* ¶ D).

In response to the Amended Complaint, Defendants filed their Motion to Dismiss. Defendants contend that, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(1), this action should be dismissed for lack of personal and subject matter jurisdiction. (Mot. to Dismiss at 1). Specifically, Defendants contend that this Court lacks general and specific personal jurisdiction over both Ebert and Sunwest. (Mem. of Law in Supp. of Mot. to Dismiss, "Mem. in Supp.") [Doc. No. 17 at 3–12]. Defendants also assert that because Ebert is the patent owner and the Court lacks personal jurisdiction over Ebert, the Court is without subject matter jurisdiction. (*Id.* at 12–13). In the alternative, Defendants argue that even if the Court determines it has jurisdiction to hear this action, the Court should transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). (Mot. to Dismiss at 2); (Mem. in Supp. at 14–18).

Clim-A-Tech responded to the Motion to Dismiss, contending that the Court should stay this action "pending the outcome of Defendants['] Post-Grant proceeding at the [PTO]." (Pl.'s Combined Resp. to Defs.' Mot. to Dismiss and Mot. to Stay, or in the Alternative for Leave to Conduct Limited Disc., "Resp.") [Doc. No. 25 at 1, 3–4]. Clim-A-Tech requests, in the alternative, "leave to conduct limited discovery on proper-party and jurisdictional issues." (*Id.* at 1, 4–7). As another alternative, Clim-A-Tech contends that "the issues between Plaintiff and Defendants may be effectively and completely resolved in a court-facilitated setting, making this case ripe for a settlement conference." (*Id.* at 7).

On November 3, 2014, the Court heard oral argument on the Motion to Dismiss and on Clim-A-Tech's alternative requests as set forth in its Response. (Minute Entry Dated Nov. 3, 2014) [Doc. No. 27]. The Court took these matters under advisement, and the issues raised by the parties are ripe for consideration. *See* (*id.*).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b) "a party may assert . . . by motion" the defense that the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In opposing a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of making a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996); *see also Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) ("[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only . . . make a prima facie showing that defendants are subject to personal jurisdiction."). "Although [t]he evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the

affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (alteration in original) (citations and internal quotation marks omitted); *see Electronics*, 340 F.3d at 1349. In determining whether the plaintiff has made its prima facie showing, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Digi-Tel*, 89 F.3d at 522; *Electronics*, 340 F.3d at 1349 ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.").

## III.   DISCUSSION

### A.   Personal Jurisdiction

#### 1.   Legal Standard

The "law of the Federal Circuit, rather than that of the regional circuits," applies to the determination of "personal jurisdiction in a patent infringement case." *Red Wing Shoe Co, Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). "This choice of governing law applies as well to personal jurisdiction in declaratory judgment actions that involve patentees as defendants." *Id.* Further, when an action involves "non-patent claims that go 'hand-in-hand' with the patent infringement claims, Federal Circuit law also applies to the non-patent claims." *WhatRU Holding, LLC v. Bouncing Angels, Inc.*, Civil No. 13-2745 (JNE/TNL), 2014 WL 641517, at *2 (D. Minn. Feb. 19, 2014) (quoting *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856–57 (Fed. Cir. 1999)).[1] Where the parties "do not dispute the jurisdictional facts,

---

[1]     The parties do not dispute that Federal Circuit law governs the Court's analysis of personal jurisdiction in this matter. *See* (Mem. in Supp. at 3, 4–13); (Resp. at 4). While some cases state broadly that Federal Circuit law, rather than that of the regional circuits, applies to the question of personal jurisdiction in a declaratory judgment patent suit, the question of whether Federal Circuit or regional circuit law applies to a **non-patent** claim in the same type of action

the question of personal jurisdiction . . . resolves itself into one of law." *Red Wing Shoe*, 148 F.3d at 1358.

A federal district court's personal jurisdiction "over a non-consenting defendant outside the boundaries of the forum is a two-step inquiry." *Id.* The court must first determine "whether a provision makes the defendant amenable to process, which usually depends on whether the defendant 'could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located.'" *Id.* (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, the court must "ensure[] that 'maintenance of the suit does not offend traditional notions of fair play and

---

depends on whether the non-patent claim goes "hand-in-hand" with the patent claims, "aris[es] out of the same facts," and whether "resolution of the patent infringement issue" is a "significant factor in deciding" the non-patent claim. *See Amana Refrigeration*, 172 F.3d at 856 (internal quotation marks omitted).

Here, Clim-A-Tech seeks declaratory judgment of non-infringement, invalidity, and unenforceability of the '581 Patent, but also asserts a claim against Sunwest for tortious interference with its existing business contracts and prospective business relationships. (Am. Compl. ¶¶ 18–67). Clim-A-Tech's non-patent tortious interference claim is based in part on Sunwest's alleged "untrue, improper and inaccurate statements to Clim-A-Tech's customers and colleagues in the industry about the nature, scope and merit of the patent infringement allegations." (*Id.* ¶ 46). Thus, this claim goes hand-in-hand with and arises out of the same facts as Clim-A-Tech's patent claims and it appears that the issue of infringement will play a significant role in deciding Clim-A-Tech's tortious interference claim. *See Furlev Sales and Assoc., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982) (stating that the tort of wrongful interference with contractual relationships requires that the wrongdoer intentionally procure breach of a contract "**without justification**" (emphasis added)). The Court therefore applies the law of the Federal Circuit with regard to all claims alleged in the Amended Complaint. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (affirming district court's application of Federal Circuit law regarding personal jurisdiction to plaintiff's claim of tortious interference where defendant sent letters to plaintiff's customers containing implications of infringement because the letters would not be "unjustifiable . . . if the implication of infringement contained therein [was] true"); *cf. ERA Marine Prods., Inc. v. Jet Dock Sys., Inc.*, Civ. No. 09-3050 (JRT/FLN), 2010 WL 3893683, at *9 (D. Minn. Sept. 30, 2010) (applying Federal Circuit law to plaintiff's non-patent claim of unfair competition because "[i]n order to determine whether [plaintiff's] unfair competition claim ha[d] merit" the Court would be required to "determine whether defendants' alleged comments that [plaintiff's] products infringe . . . [the relevant] patent are true").

substantial justice' that are embodied in the Due Process Clause." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In conducting the first step of this inquiry, courts must look to the forum state's long-arm statute. *See id.* Here, the forum state is Minnesota, and we must therefore look to Minnesota's long-arm statute. *See id.*; *see also* Minn. Stat. § 543.19. "Minnesota courts have consistently held that this long-arm statute" is coterminous with the Due Process Clause so that it "reaches as many extraterritorial defendants as the Due Process Clause will allow." *Red Wing Shoe*, 148 F.3d at 1358. As a result, the two-step inquiry described above "folds into one: whether an exercise of personal jurisdiction over [the extraterritorial defendant] would offend Due Process." *Id.*

In order to "discern the limits of Due Process on the extraterritorial reach" of this Court, the Court must determine whether the extraterritorial defendant has "established 'minimum contacts' with [the forum state], 'such that [it] should reasonably anticipate being haled into court there.'" *Id.* at 1358–59 (second alteration in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether a defendant has established sufficient minimum contacts with the forum, a court examines "the number and nature of a defendant's contacts with the forum." *Id.* at 1359.

> In general, when the cause of action at issue arises out of or relates to those contacts, a court may properly assert personal jurisdiction, even if those contacts are isolated and sporadic. Jurisdiction in this situation has the name specific jurisdiction. In fact, even a single act can support jurisdiction, so long as it creates a substantial connection with the forum, as opposed to an attenuated affiliation. In contrast, a defendant whose contacts with a forum are continuous and systematic may be subject to jurisdiction even when the cause of action has no relation to those contacts. Jurisdiction in this situation has the name general jurisdiction. In both situations, contacts only add to the quantum for personal jurisdiction when purposefully directed at the forum or its residents. Random, fortuitous, or attenuated contacts do not count in the minimum contacts calculus.

*Id.* (citations and internal quotation marks omitted).

"'Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). These other factors may in some instances demonstrate "the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* (internal quotation marks omitted). Likewise, these factors may demonstrate that the case before the court is a "compelling" one in which the exercise of personal jurisdiction is "unreasonable even though minimum contacts are present." *Id.* (internal quotation marks omitted).

For general personal jurisdiction to exist over a foreign defendant in patent litigation, the Federal Circuit "requires that the defendant have continuous and systematic contacts with the forum state." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008) (internal quotation marks omitted). With respect to specific jurisdiction, "the plaintiff must show that the defendant purposely directed its activities at residents of the forum and that the plaintiff's claim arises from or relates to those activities. In addition, the plaintiff must satisfy the court that the assertion of personal jurisdiction under the circumstances is reasonable and fair." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

In a patent action for declaratory judgment for non-infringement, invalidity and/or unenforceability, the plaintiff's claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Id.* (internal quotations marks omitted). As a result, the relevant inquiry in determining specific personal jurisdiction in a declaratory judgment patent action is "'to what extent . . . the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment

claim arises out of or relates to those activities.'" *Id.* (omission in original) (quoting *Avocent*, 552 F.3d at 1332). "Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action." *Id.* (citing *Avocent*, 552 F.3d at 1336); *see also ERA Marine*, 2010 WL 3893683, at *8 ("In a patent case where the plaintiff is **not** the patentee but rather a party seeking a declaration that its products do not infringe an existing patent, specific personal jurisdiction is examined by looking solely at the patentee's enforcement activities." (citing *Avocent*, 552 F.3d at 1332)).

### 2.    Analysis

Defendants argue that the Court cannot assert general personal jurisdiction over them because the "Amended Complaint makes virtually no allegations that either . . . Ebert or Sunwest has 'continuous and systematic' contacts with Minnesota" and because "the facts confirm the absence of" such contacts. (Mem. in Supp. at 4). In support of this argument, Defendants rely on the declarations of Ebert and Adrian Federico, the Chief of Operations and General Manager at Sunwest. (Decl. of William A. Ebert, "Ebert Decl.") [Doc. No. 18]; (Decl. of Adrian Federico, "Federico Decl.") [Doc. No. 19 at ¶ 1].

Clim-A-Tech has not addressed this aspect of Defendants' Motion to Dismiss and instead suggests that this Court should grant it leave to conduct discovery regarding: "(a) the proper parties; (b) Ebert's contacts with the State of Minnesota; and (c) Sunwest's contacts with the State of Minnesota." (Resp. at 7). Clim-A-Tech also contends that the Court should stay this action pending the outcome of the post-grant proceedings before the PTO initiated by the August 26, 2014 filing of a request for reissue and, alternatively, asks the Court to conduct a settlement conference in light of the "Court's expertise in the handling of patent cases . . . and in mediated settlement conferences." *See* (Resp. at 1, 3–4, 7).

While Clim-A-Tech's request for jurisdictional discovery is responsive to Defendants' Motion to Dismiss, Clim-A-Tech's motion to stay and its request that the Court hold a settlement conference raise distinct issues that do not relate to or address the arguments raised in the Motion to Dismiss. Indeed, Clim-A-Tech's Response is titled as a "Combined Response and . . . Motion to Stay." (Resp. at 1). To the extent Clim-A-Tech raises new issues and seeks distinct relief through a combined response and motion, the issues are not properly before the Court because Clim-A-Tech's filing does not comply with the Local Rules. Specifically, in response to a dispositive motion such as Defendants' Motion to Dismiss, a "responding party must file and serve the following documents: (A) memorandum of law; and (B) any affidavits and exhibits." L.R. 7.1(c)(2). This rule does not contemplate the filing of a new motion as a response to a previously filed motion. When a party files a motion, they must simultaneously serve and file the motion, notice of hearing, memorandum of law, any supporting affidavits and exhibits, and a meet-and-confer statement as required by Local Rule 7.1. Clim-A-Tech did not comply with these requirements.

Moreover, the Motion to Dismiss raises questions as to the Court's jurisdiction—a threshold question that the Court must address before proceeding to address other issues raised in the litigation. *See Ruhrgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999) (noting that subject matter jurisdiction "delimits federal-court power" and stating that "[p]ersonal jurisdiction, too, is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication" (omission in original) (internal quotation marks omitted)). As detailed below, the Court concludes that it does not have personal jurisdiction over Defendants and that jurisdictional discovery is not warranted here. Therefore,

even if Clim-A-Tech's motion to stay and request for a settlement conference were properly before the Court, these issues are mooted by the Court's conclusion that it lacks jurisdiction.

The Court begins by discussing the question of personal jurisdiction and will then address Clim-A-Tech's contention that jurisdictional discovery is appropriate in this case.

### a.      General Personal Jurisdiction

The Court concludes that general personal jurisdiction does not exist with respect to Ebert or Sunwest. As noted above, Clim-A-Tech does not argue in response to Defendants Motion to Dismiss that the Court has general personal jurisdiction over Defendants. *See generally* (Resp.). Despite the absence of argument the Court has considered whether Clim-A-Tech has satisfied its burden of making a prima facie showing of general personal jurisdiction over Defendants. The Court has reviewed the Amended Complaint and, even when taking the allegations therein as true and making all reasonable inferences in favor of Clim-A-Tech, there are no allegations in the Amended Complaint that demonstrate the type of continuous and systematic contacts with the forum as required for the exercise of general personal jurisdiction. *See generally* (Am. Compl.). In addition, the Court has reviewed the declarations submitted by Defendants in support of their motion, which demonstrate the complete absence of continuous or systematic contacts with Minnesota by either Ebert or Sunwest. *See, e.g.*, (Ebert Decl. ¶¶ 12–35, 41–42); (Federico Decl. ¶¶ 6–9, 23–27, 30–33, 35–44). These factual assertions regarding Ebert's and Sunwest's contacts with Minnesota are entirely uncontroverted by Clim-A-Tech in that nothing in the Amended Complaint contradicts the evidence offered in the relevant declarations, nor has Clim-A-Tech offered any evidence through declaration, affidavit, or

otherwise in opposition to Defendants' motion.[2] Clim-A-Tech has failed to make a prima facie showing of general personal jurisdiction with regard to both Ebert and Sunwest.

### b.      Specific Personal Jurisdiction

Having determined that the Court lacks general personal jurisdiction over both Ebert and Sunwest, the Court must consider whether specific personal jurisdiction exits over either defendant. Defendants contend that Clim-A-Tech has failed to allege that they have sufficient contacts with Minnesota related to the cause of action for the Court to properly exercise specific personal jurisdiction over them. (Mem. in Supp. at 6–12). First, Defendants cite their lack of any business and other contacts with Minnesota. (*Id.* at 8, 9–10) (citing Ebert Decl. and Federico Decl.). Second, Defendants allege that the only enforcement activity that they have directed at Minnesota and that is related to this cause of action is the April 30, 2014 cease and desist letter sent to Clim-A-Tech. (*Id.* at 8–9, 11) (citing Ebert Decl., Federico Decl., and Decl. of Peter Goldman, "Goldman Decl." [Doc. No. 20]).  Defendants contend that this cease and desist letter cannot establish specific personal jurisdiction. *See* (*id.*). Likewise, Defendants contend that the July 18, 2014 letter sent to Clim-A-Tech during settlement discussions, Clim-A-Tech's allegation that Defendants have made verbal accusations of patent infringement to Clim-A-Tech and "in the industry," and the August 26, 2014 filing with the PTO fail to demonstrate sufficient contacts with Minnesota for purposes of specific personal jurisdiction. (*Id.* at 7, 11–12).[3]

---

[2]      Clim-A-Tech argues instead that jurisdictional discovery is needed and that there should be an opportunity to test the veracity of the declarations and exhibits submitted by Defendants in support of the Motion to Dismiss. (Resp. at 7). These arguments are addressed below.

[3]      Defendants suggest that its activities that came **after** Clim-A-Tech's filing of its original complaint in this action should not be considered in the course of the Court's jurisdictional analysis. *See* (Reply in Supp. of Mot. to Dismiss) [Doc. No. 26 at 13]. The Court need not resolve this issue because even considering those later-occurring activities, Defendants' enforcement and defense activities are insufficient to establish specific personal jurisdiction.

In response, Clim-A-Tech again fails to directly contest Defendants' argument that it has failed to demonstrate a prima facie case of specific personal jurisdiction and, as noted, asks the Court for permission to conduct limited jurisdictional discovery. *See* (Resp. at 4–7). Clim-A-Tech does, however, note that in a declaratory judgment patent action, "the Federal Circuit has held that cease and desist communications in combination with other activities have given rise to specific personal jurisdiction." (Resp. at 5). And although Clim-A-Tech contends that jurisdictional discovery is appropriate, Clim-A-Tech discusses several facts in an apparent effort to support the Court's exercise of specific personal jurisdiction in this case. *See* (Resp. at 6). Specifically, Clim-A-Tech states that Defendants have "demand[ed] that a Minnesota corporation stop selling a product and effectively shut down an entire business line" and demanded, "[i]n settlement talks," that "a Minnesota corporation abandon a patent application pending at the [PTO]." (*Id.* at 6). Clim-A-Tech similarly states that "Defendants want a Minnesota corporation enjoined under United States Patent laws, and should stand ready to have a Minnesota court decide that issue." (*Id.*).[4]

As an initial matter, the Court notes that the parties attribute most allegations regarding patent enforcement and defense activities to both Defendants, but at times the same type of activities are attributed to Ebert or Sunwest separately. *See, e.g.*, (Am. Compl. ¶ 10) ("Defendants . . . have—starting several years ago—leveled verbal accusations of patent infringement in the industry to Clim-A-Tech's current and potential customers."); (*id.* ¶ 46)

---

[4]     Clim-A-Tech also contends that this Court is the "appropriate [c]ourt to entertain" this action because the "District of Minnesota is very qualified to handle the resolution of a patent dispute" and because "[p]er Defendants' submission, copper mining **may** very soon be happening here in Minnesota," meaning that "Defendants **may** be in Minnesota" before reissue proceedings before the PTO are complete. (*Id.* at 6) (emphasis added). This Court's ability to manage patent litigation is no substitute for sufficient contacts with the forum, nor are hypothetical future contacts with the forum based on a less than certain development in the mining industry.

("Sunwest . . . ma[de] untrue, improper and inaccurate statements to Clim-A-Tech's customers and colleagues in the industry about the nature, scope and merit of the patent infringement allegations . . . .); (*id.* ¶ 11) ("[O]n April 30, 2014, a cease and desist letter was sent on behalf of 'Sunwest' to the Chief Operating Officer at Clim-A-Tech at their headquarters in Hopkins, Minnesota."); (Ebert Decl. ¶ 85) ("The [April 30, 2014 cease and desist letter] was sent to Clim-A-Tech for and on behalf of both Sunwest and [Ebert]."). To the extent any factual conflict exists with regard to which activities are attributable to Ebert, Sunwest, or both, the Court views the evidence in the light most favorable to Clim-A-Tech and resolves this factual conflict in its favor by attributing all enforcement and defense activities in question to both Ebert and Sunwest. *See Digi-Tel*, 89 F.3d at 522; *Electronics*, 340 F.3d at 1349.[5] As discussed below, however, even when considering the evidence in this favorable light, the Court concludes that Clim-A-Tech has failed to make a prima facie showing of specific personal jurisdiction as to Defendants.

Beginning with the cease and desist letters sent by Defendants to Clim-A-Tech, the Federal Circuit has made it clear that such contacts alone cannot establish specific personal jurisdiction. "While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because the letters are purposefully directed at the forum and the declaratory judgment action arises out of the letters," in light of "policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer **by themselves** do not suffice to create personal jurisdiction." *Avocent*, 552 F.3d at 1333 (citation and internal quotation marks omitted). "'[T]o exercise jurisdiction in such a situation would not

---

[5]    In addition, while the Court typically considers each defendant and each of a plaintiff's claims individually in the course of an analysis of personal jurisdiction, the Court need not do so here when all contacts are attributed to both Defendants and when all of Clim-A-Tech's claims relate to the same patent and the same set of contacts with the forum state. *See Electronics*, 340 F.3d at 1349 n.2; *3M Co. v. Kinik Co.*, No. Civ. 04-123 (ADM/AJB), 2004 WL 1328268, at *3 (D. Minn. June 15, 2004).

comport with fair play and substantial justice.'" *Id.* (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003)).

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

*Red Wing Shoe*, 148 F.3d at 1360–61.

Thus, the April 30, 2014 cease and desist letter cannot, as a matter of "fair play and substantial justice" provide specific personal jurisdiction over Defendants. *See Avocent*, 552 F.3d at 1333 (internal quotation marks omitted). The same is true for the July 18, 2014 letter sent to Clim-A-Tech. The July 18, 2014 letter "maintained" the "April 30, 2014 cease and desist demand, and position that no patent license will be offered" to Clim-A-Tech. (Am. Compl. ¶ 13).[6] Likewise, the Court concludes that Clim-A-Tech's allegation that Ebert "verbally threatened Clim-A-Tech with allegations of infringement" and its assertion in its brief that "[i]n settlement talks, Defendants have . . . gone so far as to . . . demand that [Clim-A-Tech] abandon a patent application pending at the [PTO]," do not establish specific personal jurisdiction over Defendants. *See* (Am. Compl. ¶ 61); (Resp. at 6). These are additional allegations of infringement and a cease and desist demand made in the course of settlement negotiations. Treating these communications as sufficient contacts for purposes of specific personal

---

[6]    Clim-A-Tech does not allege that the attorneys that sent the April 30, 2014 cease and desist letter and the July 18, 2014 letter are forum state attorneys, nor does the record suggest that this is the case. *See* (Goldman Decl. ¶ 35(9)) (stating that Mark Ogram is a patent attorney from Tucson, Arizona); (Mem. in Supp. at 19) (listing Peter Goldman's address in Tucson, Arizona and providing his Arizona bar number); *cf. Electronics*, 340 F.3d at 1351 (finding specific personal jurisdiction over defendants based in part of defendants' pre-litigation hiring of a forum-state attorney that contacted plaintiff "at various times to report on the progress of the pending [patent] application").

jurisdiction would be contrary to the fairness principles articulated in *Red Wing Shoe*, as it would fail to give a defendant patentee "sufficient latitude to inform others of its patent rights." 148 F.3d at 1360; *see also Radio Sys.*, 638 F.3d at 788, 791 (holding that emails and letters from defendant's counsel to plaintiff, including two letters describing defendant's infringement allegations and suggesting settlement via a licensing agreement were "insufficient to give rise to personal jurisdiction in light of the principles of *Red Wing Shoe*"); *Electronics*, 340 F.3d at 1351 ("[O]ther activities distinct from threats of infringement are required for a patentee to be subject to personal jurisdiction in the forum").[7] In addition, it could "provid[e] disincentives for the initiation of settlement negotiations." 148 F.3d at 1361. As the court noted in *Red Wing Shoe*:

> The policy favoring settlement is manifest in, among other places, the Federal Rules of Evidence. The Rules provide that evidence of promising to accept . . . a valuable consideration in . . . attempting to compromise a claim is not admissible to prove liability for the claim. Nor is evidence of conduct or statements made in compromise negotiations. Although the Rules do not explicitly make evidence of such negotiations inadmissible to establish personal jurisdiction, the policy underlying the Rules supports an approach that fosters settlement of infringement claims. Indeed, this policy squarely invokes one of the considerations enumerated by the Supreme Court for the second prong of a proper Due Process analysis, namely, the interstate judicial system's interest in obtaining the most efficient resolution of controversies.

*Id.* (citations and internal quotation marks omitted); *see also id.* ("'[C]ourts have hesitated to use unsuccessful settlement discussions as contacts for jurisdictional purposes.'" (quoting *Digi-Tel*, 89 F.3d at 524)).

---

[7]     The Court notes that in its briefing, Clim-A-Tech appears to characterize Defendants' various cease and desist demands as "a requested injunction that threatens one of [Minnesota's] corporate residents" and states that "Defendants want a Minnesota corporation enjoined under the United States Patent laws." (Resp. at 6). This characterization—though it appears innocent—is somewhat misleading, as the language used might suggest that Defendants have requested an injunction from this Court. If Defendants had "initiat[ed] judicial . . . patent enforcement within the forum" the Court's analysis may be different here, but Clim-A-Tech's recasting of cease and desist communications as "a requested injunction" blurs the line between two courses of action available to a patentee that may carry with them distinct jurisdictional consequences. *See Avocent*, 552 F.3d at 1334.

Because Defendants cease and desist demands alone do not permit the Court's exercise of specific personal jurisdiction over Defendants, the Court must consider whether there are "other activities directed at the forum and related to the cause of action besides" Defendants' cease and desist demands. *See Avocent*, 552 F.3d at 1333 (internal quotations marks omitted).

As discussed above, the other allegations of enforcement and defense activities that appear to be related to this cause of action are Defendants' accusations "in the industry" of Clim-A-Tech's infringement of the '581 Patent and the request for reissue filed with the PTO on August 26, 2014. *See* (Am. Compl. ¶¶ 10, 14). Nonetheless, in *Avocent* the Federal Circuit emphasized "that enforcement activities taking place outside the forum state do not give rise to personal jurisdiction." *Radio Sys.*, 638 F.3d 792 (discussing *Avocent* decision). Here, Defendants' "contacts with the PTO" via the filing of a request for reissue do not support specific personal jurisdiction "because those contacts were directed at Virginia (the site of the PTO) rather than" Minnesota. *Id.*; *see also* (Ex. 3, Attached to Goldman Decl.) [Doc. No. 20-3 at 2] (including copy of mailing receipt for application for reissue submitted to the PTO, showing recipient's address in "Alexandria, VA").

Likewise, Clim-A-Tech's allegation that Defendants have made "verbal accusations of patent infringement in the industry to Clim-A-Tech's current and potential customers" fails to demonstrate that Defendants have purposefully directed this activity toward the forum state or its residents. (Am. Compl. ¶ 10). Clim-A-Tech does not allege that any such accusations were made in Minnesota or directed toward any Minnesota resident. And the declarations submitted by Defendants in support of the Motion to Dismiss demonstrate that: (1) the "the industry" in question is located in the Southwestern United States and abroad; (2) any statements made by Defendants regarding Clim-A-Tech's infringement of or the validity of the '581 Patent were

made in Arizona; (3) neither Ebert nor Sunwest have relationships with any resident of Minnesota; (4) Ebert has had "no contact with any of Clim-A-Tech's Minnesota customers for edge protectors"; and (5) Sunwest has not, with the exception of cease and desist demands sent to Clim-A-Tech, made statements regarding infringement or the validity of the '581 Patent "to any Minnesota resident." (Ebert Decl. ¶¶ 22, 41, 78, 88); (Federico Decl. ¶¶ 7, 23, 28–44, 109, 111). Because these activities took place "outside the forum state" they "do not give rise to personal jurisdiction in the forum." *Radio Sys.*, 638 F.3d at 792; *see also Red Wing Shoe*, 148 F.3d at 1359 ("[C]ontacts only add to the quantum for personal jurisdiction when purposefully directed at the forum or its residents.").[8] Clim-A-Tech has therefore failed to make a prima facie showing of specific personal jurisdiction.

### c. Jurisdictional Discovery

As noted, Clim-A-Tech asks the Court to authorize jurisdictional discovery, contending that "[l]imited discovery to determine and fully understand the facts is in order." (Resp. at 7). In support of this contention, Clim-A-Tech argues that the "Declarations and Exhibits filed in support of Defendants' Motion to Dismiss have not been subject to cross-examination or any other inquiry" and that the motion "cannot be decided on self-serving assertions alone." (*Id.*).

Although the law of the Federal Circuit applies to the determination of personal jurisdiction in a declaratory judgment action for non-infringement, the law of the regional circuit

---

[8]     Clim-A-Tech cites *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008), *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000), to demonstrate that specific personal jurisdiction may exist here. *See* (Resp. at 5–6). *Campbell Pet* is distinguishable "on the ground that in that case, the [defendant's] extrajudicial enforcement activities occurred **within the forum state**." *See Radio Sys.*, 638 F.3d at 791–92 (emphasis added). In addition, to the extent Clim-A-Tech relies on *Dudnikov* and *Bancroft & Masters* to support an argument that Defendants' accusations of infringement in the industry and filing with the PTO support specific personal jurisdiction in this District, the Federal Circuit has rejected this argument, reasoning that this argument "runs afoul of [its] decision in *Avocent*." *Radio Sys.*, 638 F.3d at 792.

governs this Court's determination of whether jurisdictional discovery is warranted. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) ("We review the district court's denial of discovery, an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit."). In the Eighth Circuit, jurisdictional discovery is not warranted when "the plaintiff fail[s] to rebut the defendants' assertions against jurisdiction and offer[s] only conclusory allegations to support [its] claim that personal jurisdiction" exists. *Greenbelt Res. Corp. v. Redwood Consultants, LLC*, 627 F. Supp. 2d 1018, 1028 (D. Minn. 2008) (DWF/SRN) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004)). A plaintiff must offer "'documentary evidence and not merely speculations or conclusory allegations' regarding the defendant's contacts with the forum state." *See id.* at 1027 (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008)).

Clim-A-Tech failed to offer any documentary evidence regarding Sunwest's or Ebert's contacts with Minnesota and failed to rebut Defendants' assertions against jurisdiction. Indeed, Clim-A-Tech does not even propose what evidence jurisdictional discovery might reveal about the "proper parties" to this action and/or Defendants' contacts with Minnesota, but simply asserts that "[l]imited discovery . . . is in order." (Resp. at 7); *see generally* (*id.* at 4–7). Clim-A-Tech's request for jurisdictional discovery is "not specifically targeted to flesh out connections already shown to exist, but instead is more akin to a fishing expedition in which a plaintiff intends to cast a wide net for potential contacts with a forum state." *Greenbelt*, 627 F. Supp. 2d at 1028.

Clim-A-Tech cites *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372 (Fed. Cir. 2012), in support of its request for jurisdictional discovery, arguing that this Court must "fully vet Declaratory Judgment jurisdictional issues." (Resp. at 6). *3M* is inapplicable here. First, as noted

above, the question of jurisdictional discovery is governed by regional circuit law rather than the law of the Federal Circuit. *Autogenomics*, 566 F.3d at 1021.

Second, the facts of *3M* are distinguishable. In *3M*, the Federal Circuit reviewed the district court's dismissal of a declaratory judgment action for lack of subject matter jurisdiction. *3M*, 673 F.3d at 1374. In the district court, the parties disputed the content and confidential nature of discussions between the parties—a factual dispute that was "central to the jurisdictional analysis." *Id.* at 1378. The district court did not resolve the parties' factual dispute and instead reasoned that even taking the plaintiff's allegations as true, there was no actual controversy for purposes of the Declaratory Judgment Act, leaving the court without subject matter jurisdiction. *Id.* at 1375–76. On appeal, the Federal Circuit held that, if found by the district court, "the facts alleged in [the plaintiff's] complaint . . . would demonstrate the existence of a case or controversy under the Declaratory Judgment Act." *Id.* at 1378. But because the district court did not resolve the parties' factual disputes and the circuit court could not "resolve the parties' factual disputes on appeal," the Federal Circuit remanded the matter to the district court for factual findings. *Id.* at 1378, 1382.

While Clim-A-Tech cites *3M* in support of its request for jurisdictional discovery, the *3M* court did not address the issue of jurisdictional discovery. *See generally id.* at 1372–82. Rather, *3M* addressed the need for the district court to address the parties' factual dispute, the resolution of which was crucial to the question of the court's subject matter jurisdiction. Unlike *3M*, Clim-A-Tech has not made any factual allegations in its Amended Complaint or offered evidence or argument in opposition to Defendants' Motion to Dismiss that creates a factual dispute regarding crucial jurisdictional facts. And even viewing the evidence in the light most favorable to Clim-A-Tech, as the Court must in considering Defendants' Motion to Dismiss, the Court concludes that

20

it does not have personal jurisdiction over Defendants. In sum, *3M* does not support Clim-A-Tech's argument that jurisdictional discovery is warranted here.

As noted earlier, Clim-A-Tech offers only the conclusory statement that "[l]imited discovery to determine and fully understand the facts is in order." (Resp. at 7). Such conclusory statements fall well-short of the showing necessary to warrant jurisdictional discovery. *See Greenbelt*, 627 F. Supp. 2d at 1027–28. In addition, to the extent Clim-A-Tech contends that limited discovery should be permitted because the "Declarations and Exhibits filed in support of Defendants' Motion to Dismiss have not been subject to cross-examination or any other inquiry" and because the Court cannot decide the Motion to Dismiss based "on self-serving assertions alone," its argument is without merit. (Resp. at 7). On a motion to dismiss for lack of personal jurisdiction, the plaintiff's prima facie showing of jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotation marks omitted); *see Electronics*, 340 F.3d at 1349. The declaration and exhibits are properly considered by the Court in this instance, and Clim-A-Tech has "not provided any reason why the Court should view the [submissions] as incorrect or incomplete." *Vetta-Zelo, Inc. v. Ideum, Inc.*, Civ. No. 13-367 (MJD/JJK), 2013 WL 3177804, at *9 (D. Minn. June 24, 2013) (declining to permit jurisdictional discovery when defendant provided sworn affidavit "showing what appear[ed] to be the entirety of any potential relevant contacts with Minnesota" because there was "nothing to indicate that any discovery would indicate any more contacts than ha[d] already been described by" the defendant). Jurisdictional discovery is not appropriate in this case.

### 3.   Conclusion

In sum, the Court concludes that it lacks personal jurisdiction over Defendants and that jurisdictional discovery is unwarranted. For these reasons, the Court recommends that Defendants' Motion to Dismiss be granted and that Clim-A-Tech's Amended Complaint be dismissed without prejudice.

### B.   Defendants' Additional Arguments

In addition to Defendants' argument that the Court lacks personal jurisdiction over them, Defendants argue that without personal jurisdiction over Ebert, this Court "lacks subject matter jurisdiction over this case." (Mem. in Supp. at 12). In support of this argument, Defendants cite *A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010) and *AsymmetRx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314 (Fed. Cir. 2009).

Neither *A123 Systems* nor *AsymmetRx* provide the rule of law that Defendants articulate—namely, that without personal jurisdiction over a patent owner, a court lacks subject matter jurisdiction over the action. Indeed, neither *A123 Systems* nor *AsymmetRx* discuss the court's subject matter jurisdiction. *See A123 Sys.*, 626 F.3d 1213; *AsymmetRx*, 582 F.3d 1314. Rather, *A123 Systems* involved dismissal of the plaintiff's declaratory judgment action based on the failure to join a necessary and indispensable party under Federal Rule of Civil Procedure 19. *A123 Systems*, 626 F.3d at 1222 ("Accordingly, we hold that UT was not only a necessary party but also an indispensable party, making dismissal appropriate"). Similarly, *AsymmetRx* involved the dismissal of the plaintiff's infringement action based on the court's conclusion that the plaintiff had no "statutory right to bring an action for infringement without joining the patent owner," a conclusion consistent with Rule 19's required joinder standards. *AsymmetRx*, 582 F.3d at 1318, 1321–22 (concluding that because patent owner "did not convey all substantial rights"

in patents in suit to plaintiff, plaintiff "lack[ed] statutory standing, on its own, to bring an infringement suit").

To the extent Defendants contend that dismissal is appropriate because Ebert is a necessary and indispensable party under Rule 19 over whom the Court lacks personal jurisdiction, *see* (Mem. in Supp. at 13), an analysis of those issues is superfluous given the procedural posture of this case and in light of the Court's conclusion that it lacks personal jurisdiction over both Sunwest and Ebert. That is, the Court does not have personal jurisdiction, with respect to any claim, over Sunwest or Ebert, both of whom are already named as the defendants in this case. As such, dismissal of the action in its entirety appropriate and an inquiry into joinder issues is unnecessary.[9] The Court's conclusion as to personal jurisdiction therefore

---

[9]     An analysis under Rule 19 as to Ebert's status as a necessary and indispensable party might be required had Defendants argued or the record demonstrated that the Court has personal jurisdiction over Sunwest but not Ebert, or if Clim-A-Tech had sued only Sunwest. *Cf. Takonix Inc. v. BrakeAway Prods., Inc.*, Civil No. 10-3987 (ADM/JJG), 2011 WL 495776, at *2 (D. Minn. Feb. 4, 2011) (discussing defendant's argument that patent owner was "necessary and indispensable party who ha[d] not been joined" and noting plaintiff's concession that patent owner did not "appear to be subject to jurisdiction in Minnesota, and that if he is a necessary and indispensable party th[e] action should be dismissed"); *AXA Equitable Life Ins. Co. v. Paulson*, Civil No. 06-341 (DSD/SRN), 2007 WL 3124689, at *3 (D. Minn. Oct. 24, 2007) (concluding that defendant over whom the court lacked personal jurisdiction was necessary and indispensable party with respect to certain claims and dismissing such claims while allowing other claims to proceed against remaining defendants). But these factual scenarios and legal arguments are not present.

The Court also notes that Defendants' effort to make a subject matter jurisdiction argument is perhaps a product of the "impression . . . created that a failure to join is jurisdictional" and statements by courts "that speak of nonjoinder as ousting the court of jurisdiction." 7 Charles Alan Wright, et al., Fed. Practice & Procedure § 1611 (3d ed. 2001). "[T]he vast majority of courts reject this 'jurisdictional' characterization." *Id.* (footnote omitted) ("'The framers of the new Rule 19 . . . specifically emphasize that the Rule calls for determining whether the court ought to proceed without the absent party, not whether it has jurisdiction to proceed against those who are present.'" (quoting *Rippey v. Denver U.S. Nat'l Bank*, 42 F.R.D. 316, 318–19 (D. Colo. 1967)); *see also Warner v. First Nat'l Bank of Minneapolis*, 236 F.2d 863, 857 (8th Cir. 1956) ("The issue of want of indispensable parties is not a jurisdictional one.").

moots Defendants' arguments regarding Ebert's status as a necessary and indispensable party and any alleged jurisdictional consequences.

As an alternative to their jurisdictional arguments, Defendants ask the Court to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). (Mem. in Supp. at 14–18). Like Defendants' argument with regard to subject matter jurisdiction, the question of whether a transfer of venue is appropriate under section 1404(a) is mooted by the fact that the Court lacks personal jurisdiction over Defendants. *See ERA Marine*, 2010 WL 3893683, at *10 (denying motion to transfer venue as moot where court lacked personal jurisdiction over defendant).

## III.   CONCLUSION

Based on the foregoing, the Court concludes that it lacks personal jurisdiction over Defendants, jurisdictional discovery is not warranted, and that, as a result, the remaining arguments raised by Defendants are moot. The Court therefore recommends granting Defendants' Motion to Dismiss to the extent it seeks dismissal for lack of personal jurisdiction and denying the remainder of the motion as moot. In light of the Court's conclusion that it lacks personal jurisdiction over Defendants, the Court further recommends dismissing without prejudice Clim-A-Tech's Amended Complaint.

## IV.   RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendants William A. Ebert and Sunwest Supply, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction and Motion in the Alternative to Transfer Venue [Doc. No. 15] be **GRANTED** to the extent

Defendants seek dismissal for lack of personal jurisdiction and **DENIED as moot** in all other respects.

2.     Plaintiff Clim-A-Tech Industries, Inc.'s Amended Declaratory Judgment Complaint [Doc. No. 8] be **DISMISSED without prejudice**.

Dated: April 22, 2015

 *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 6, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.